# Illinois Official Reports

## Appellate Court

---

### *Wells Fargo Bank, N.A. v. McCondichie*, 2017 IL App (1st) 153576

---

| | |
|---|---|
| Appellate Court Caption | WELLS FARGO BANK, N.A., acting as agent for HUD (The Owner), Plaintiff-Appellee, v. VOLNEAT VANETTE McCONDICHIE, a/k/a Volnet McCondichie, Defendant-Appellant (Harvie Bonner and Unknown Occupants, Defendants). |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-3576 |
| Filed<br>Rehearing denied | March 31, 2017<br>May 3, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-M1-712641; the Hon. Diana Rosario, Judge, presiding. |
| Judgment | Reversed; cause remanded. |
| Counsel on Appeal | Robert Habib, of Law Offices of Robert Habib, of Chicago, for appellant.<br><br>Michael N. Varak, of Pierce & Associates, PC, of Chicago, for appellee. |
| Panel | JUSTICE REYES delivered the judgment of the court, with opinion.<br>Presiding Justice Gordon and Justice Lampkin concurred in the judgment and opinion. |

# OPINION

¶ 1        Defendant Volneat McCondichie appeals from the circuit court's order granting summary judgment in favor of plaintiff Wells Fargo Bank, N.A. on its claim for forcible entry and detainer. On appeal, defendant maintains that summary judgment should not have been granted where she was entitled to a relocation assistance fee pursuant to section 5-14-050 of the Protecting Tenants in Foreclosed Rental Property Ordinance (Ordinance) (Chicago Municipal Code § 5-14-050 (added June 5, 2013)). For the reasons that follow, we reverse and remand for further proceedings.

¶ 2                                    BACKGROUND
¶ 3        On July 24, 2014, Plaintiff became the owner of a property located at 7223 South Union Avenue, 2nd Floor, Chicago, Illinois (the property), pursuant to an order approving the judicial sale in a separate mortgage foreclosure cause of action. Almost a year later, on July 2, 2015, plaintiff filed a complaint in forcible entry and detainer for possession of the property, alleging that possession was being unlawfully withheld by defendants McCondichie, Harvie Bonner, and unknown occupants. Defendant filed an answer on September 1, 2015, but did not deny the allegations set forth in the complaint. Instead, defendant alleged that she resided in the property pursuant to a valid lease, which was executed on September 1, 2014, and that she was entitled to a relocation assistance fee pursuant to section 5-14-050 of the Ordinance because she is a "qualified tenant." Defendant further alleged that plaintiff's noncompliance with the Ordinance prevented it from obtaining a judgment in this matter. In her prayer for relief, defendant requested that a judgment be entered in her favor and that she be awarded costs. Defendant also attached the September 2014 lease as an exhibit to her answer.

¶ 4        On November 10, 2015, plaintiff filed a motion for summary judgment, arguing it had a superior right to possession pursuant to the order approving the judicial sale and the underlying deed. In response, defendant asserted that she had resided in the property since January 6, 2012, and was a "qualified tenant" under the Ordinance because she was a tenant in a foreclosure rental property pursuant to a "bona fide rental agreement" prior to plaintiff becoming the owner. Accordingly, she maintained that she was entitled to the $10,600 relocation fee as provided in the Ordinance and that plaintiff is not entitled to possession of the property until it abided by said Ordinance. Attached to defendant's response was copy of the executed January 6, 2012, lease. The lease indicated a termination date of January 6, 2013, but it contained further provisions that would establish a month-to-month tenancy after the expiration of the lease. Defendant also averred in an affidavit that she "moved into" the property on or about January 6, 2012, pursuant to the lease, which required her to pay $950 per month, and "continue[d] to reside in [the property] pursuant to a lease dated 9/1/14."

¶ 5        In reply, plaintiff argued that the Ordinance did not apply to defendant because the former owner's property rights were foreclosed on July 24, 2014, when the order approving the judicial sale of the property was entered in plaintiff's favor. Thus, when defendant entered into a lease with the former property owner in September 2014, that lease was not a "bona fide lease" as required by the Ordinance. Plaintiff concluded that defendant failed to provide any basis for the claim that plaintiff is liable for the relocation fee pursuant to the Ordinance and that there was no genuine issue of material fact that precluded the entry of summary judgment.

¶ 6   The circuit court granted plaintiff's motion and entered an order of possession in favor of plaintiff on December 11, 2015. This appeal followed.

¶ 7                                                    ANALYSIS

¶ 8   On appeal, defendant contends that the circuit court erred in entering summary judgment in favor of plaintiff where she was a qualified tenant pursuant to a *bona fide* rental agreement under the Ordinance. According to defendant, pursuant to her original lease, she was a month-to-month tenant at the time plaintiff obtained possession of the property and, thus, is entitled to the $10,600 relocation assistance fee.

¶ 9   In response, plaintiff asserts that the Ordinance cannot form the basis for an affirmative defense to a forcible entry and detainer action. Plaintiff further argues that even if it is a viable defense, defendant (1) did not raise her argument regarding the month-to-month tenancy before the circuit court, and (2) failed to present any evidence that she had a *bona fide* rental agreement where there was never any acceptance of rent to create such a month-to-month tenancy.

¶ 10   Summary judgment is appropriate only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). The purpose of summary judgment is not to decide issues of fact but rather to determine whether any genuine issue of fact exists. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 517 (1993). The circuit court must view the documents and exhibits in a light most favorable to the nonmoving party. *Banco Popular North America v. Gizynski*, 2015 IL App (1st) 142871, ¶ 36. Summary judgment is a drastic measure and may be granted only if the movant's right to judgment is clear and free from doubt. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). The purpose of summary judgment is not to try an issue of fact but rather to determine whether a triable issue of fact exists. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). If the moving party supplies facts, which, if not contradicted, would entitle the party to judgment as a matter of law, the nonmoving party cannot rely on his pleadings alone to create a genuine issue of material fact. *Fields v. Schaumburg Firefighters' Pension Board*, 383 Ill. App. 3d 209, 224 (2008). Instead, "[a]lthough a plaintiff is not required to prove his case at the summary judgment stage, in order to survive a motion for summary judgment, the nonmoving party must present a factual basis that would arguably entitle the party to a judgment." *Robidoux*, 201 Ill. 2d at 335. A reviewing court will not reverse an order granting summary judgment unless it finds that a material question of fact is present and the moving party is not entitled to judgment as a matter of law. *Chmielewski v. Kahlfeldt*, 237 Ill. App. 3d 129, 137 (1992). We review the circuit court's grant of summary judgment *de novo*. *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 28. Under *de novo* review, we perform the same analysis that a trial court would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 11   Our review of the record reveals that plaintiff's noncompliance with the Ordinance is a viable defense to the forcible entry and detainer action. Section 9-106 of the Forcible Entry and Detainer Act states that "[t]he defendant may under a general denial of the allegations of the complaint offer in evidence any matter in defense of the action." 735 ILCS 5/9-106 (West 2014). Section 9-106 continues, "no matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise." *Id.* Thus, while forcible

- 3 -

entry and detainer proceedings determine which party has a right to possession of and not title to real estate (*Wood v. Wood*, 284 Ill. App. 3d 718, 722 (1996)), an issue germane to the proceedings may be introduced by the defendant. Our supreme court has defined "germane" within this context to mean "closely allied" or "closely related; closely connected; relevant; pertinent; appropriate." (Internal quotation marks omitted.) *Rosewood Corp. v. Fisher*, 46 Ill. 2d 249, 256 (1970). We find the Ordinance at issue here is "closely allied" with the Forcible Entry and Detainer Act, particularly where the Ordinance provides that the qualified tenant must bring a claim for relocation assistance prior to the entry of a judgment of possession of the rental unit. See Chicago Municipal Code § 5-14-050(e)(2) (added June 5, 2013).

¶ 12    Plaintiff disagrees and argues that its obligation to pay a relocation assistance fee is triggered by a qualified tenant vacating the property pursuant to section 5-14-050(b) of the Ordinance. Thus, plaintiff maintains, to the extent that defendant here did not allege she had already vacated the property, the question of whether it is obligated to pay the relocation assistance fee cannot form the basis of an affirmative defense.

¶ 13    Plaintiff's argument is premised on the following language of the Ordinance: "The owner shall pay the relocation fee to the qualified tenant no later than seven days after the day of complete vacation of the rental unit by the qualified tenant." Chicago Municipal Code § 5-14-050(b) (added June 5, 2013). We decline to consider a defendant's performance of this provision to be a condition precedent for a defendant to seek relief under the Ordinance. A fundamental principle of statutory construction is to view all provisions of a statutory enactment as a whole. Accordingly, words and phrases should not be construed in isolation but must be interpreted in light of its other relevant provisions. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000); see *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 492 (2009) (the same rules of construction apply to interpreting municipal ordinances as apply to construing statutes).

¶ 14    The Ordinance, when read as a whole, provides that: "the owner of a foreclosed rental property shall pay a one-time relocation assistance fee of $10,600 to a qualified tenant unless the owner offers such tenant the option to renew or extend the tenant's current rental agreement." Chicago Municipal Code § 5-14-050(a)(1) (added June 5, 2013). The Ordinance further provides that an owner, *i.e.* plaintiff, "shall not be liable to pay the relocation fee to any qualified tenant *** against whom the owner has obtained a judgment for possession of the rental unit." Chicago Municipal Code § 5-14-050(e)(2) (added June 5, 2013). Thus, it follows that a tenant's claim to a relocation fee from an owner, if not previously asserted in a separate legal action, must be raised during the eviction proceedings. See Chicago Municipal Code § 5-14-070(a) (added June 5, 2013) (allowing a tenant to bring a private cause of action under the Ordinance). In this instance, defendant raised this issue in her answer. It would be paradoxical, indeed, to hold that defendant's claim is not a defense germane to the issue of possession where, at this point in time, if defendant was required to present her claim in a separate legal action, she would be denied recovery based on the language of the Ordinance. This is particularly true where the purpose of the Ordinance is to "protect and promote the health, safety and welfare of its residents and mitigate the damaging effects on our communities of foreclosures, which individually are catastrophic for the families and tenants who lose their homes." Chicago Municipal Code § 5-14-010 (added June 5, 2013). Indeed, upon examining the Ordinance as a whole, we construe this provision of the Ordinance to

merely provide a time frame for when an owner must relinquish payment. See Chicago Municipal Code § 5-14-050(b) (added June 5, 2013).

¶ 15 Having determined that defendant properly raised this defense before the circuit court, we turn to consider the merits of the appeal. The question before this court is whether there was a genuine issue of material fact as to whether defendant was a qualified tenant pursuant to a *bona fide* rental agreement under the Ordinance, thus preventing entry of judgment as a matter of law.

¶ 16 Plaintiff contends that defendant is not a qualified tenant because she submitted "two different leases that were not bona fide" to the circuit court. Plaintiff maintains that the Ordinance fails to include a definition of "bona fide" and turns instead to the Illinois Mortgage Foreclosure Law for the definition of "bona fide lease." Under that definition, plaintiff argues, a lease is *bona fide* only if it is entered prior to the date the trial court entered the order confirming the judicial sale. See 735 ILCS 5/15-1224(d) (West 2014). Plaintiff concludes that because the lease at issue here was entered after the order confirming the judicial sale, the lease is not *bona fide*.

¶ 17 The relevant portion of the Ordinance at issue provides:

> "[T]he owner of a foreclosed rental property shall pay a one-time relocation assistance fee of $10,600 to a qualified tenant unless the owner offers such tenant the option to renew or extend the tenant's current rental agreement with an annual rental rate ***."[1] Chicago Municipal Code § 5-14-050(a)(1) (added June 5, 2013).

A "qualified tenant" means a person who:

> "(1) is a tenant in a foreclosed rental property on the day that a person becomes the owner of that property; and (2) has a bona fide rental agreement to occupy the rental unit as the tenant's principal residence." Chicago Municipal Code § 5-14-020 (added June 5, 2013).

The Ordinance further sets forth that the term "rental agreement" has the meaning ascribed to it in section 5-12-030 of the Chicago Municipal Code:

> " 'Rental agreement' means all written or oral agreements embodying the terms and conditions concerning the use and occupancy of a dwelling unit by a tenant." Chicago Municipal Code § 5-12-030 (amended May 12, 2010).

For the purposes of the definition of "rental agreement" the Ordinance states:

> "(1) a rental agreement shall be considered bona fide only if:
>
>> (i) the mortgagor, or any child, spouse, or parent of the mortgagor residing in the same dwelling unit with the mortgagor, is not the tenant;
>>
>> (ii) the rental agreement was a result of an arms-length transaction; and
>>
>> (iii) the rental agreement requires the receipt of rent that is not substantially less than fair market rent for the property, or the rental unit's rent is reduced or subsidized due to a government subsidy." Chicago Municipal Code § 5-14-020 (added June 5, 2013). [2]

---

[1] It is undisputed that plaintiff did not offer defendant the option to renew or extend her current rental agreement.

[2] We observe that several factual issues are not contested by the parties in regards to whether defendant is a "qualified tenant" with a "bona fide rental agreement." Specifically, it is undisputed that

¶ 18    We find the Ordinance, and the definitions it expressly references, govern our interpretation of a "qualified tenant" and "bona fide rental agreement" and therefore decline to adopt plaintiff's suggestion that we apply the Illinois Mortgage Foreclosure Law in this instance. See *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81 (1994) (because the text of the statute itself is considered the surest reflection of that intent, where statutory language is clear, courts must give it effect as written without recourse to outside sources of interpretation). Moreover, defendant produced two leases for the property, one that was dated after the order approving the judicial sale was entered and the other dated when the mortgagor was in possession of the property. Thus, the issue in this case is whether the initial January 2012 lease, and not the September 2014 lease, was a *bona fide* rental agreement.

¶ 19    To that end, plaintiff asserts that defendant is not a qualified tenant pursuant to a *bona fide* rental agreement because she (1) failed to raise the issue that she was a month-to-month tenant before the circuit court and (2) failed to demonstrate that there was any acceptance of rent to create a month-to-month tenancy.

¶ 20    We disagree that defendant failed to raise this issue. A copy of defendant's original lease was provided to the circuit court. The original lease included a provision that a month-to-month tenancy would be created if defendant remained in the property after the lease expired. Defendant alleged she resided in the property from January 6, 2012, to the present. Accordingly, whether defendant was a qualified tenant pursuant to a month-to-month tenancy was before the circuit court.

¶ 21    Our review of the record reveals, however, that a genuine issue of material fact does exist as to whether defendant actually had a valid month-to-month tenancy under the provisions of the original lease. The original lease provided in pertinent part:

> "Upon termination date [January 6, 2013], Tenant shall be required to vacate the Premises unless one of the following circumstances occur:
>
> (i) Landlord and Tenant formally extend this Illinois Lease Agreement in writing or create and execute a new, written, and signed Illinois Lease Agreement; or
>
> (ii) Landlord willingly accepts new Rent from Tenant, which does not constitute past due Rent.
>
> In the event that Landlord accepts new rent from Tenant after the termination date, a month-to-month tenancy shall be created. If at any time either party desires to terminate the month-to-month tenancy, such party may do so by providing to the other party written notice of intention to terminate at least 30 days prior to the desired date of termination of the month-to-month tenancy.

---

(1) defendant was a tenant in a foreclosed rental property on the day plaintiff became the owner; (2) the property was defendant's primary residence; (3) a rental agreement existed between defendant and the original owner in 2012; (4) defendant was not the mortgagor or the child, spouse, or parent of the mortgagor; (5) the rental agreement was the result of an arms-length transaction; and (6) the rent is not substantially less than fair market value or reduced or subsidized due to a government subsidy. See Chicago Municipal Code § 5-14-020 (added June 5, 2013); § 5-12-030 (amended May 12, 2010). Thus, the only factual question that the parties dispute on appeal is whether defendant is a "qualified tenant" under the Ordinance.

*** Rent shall continue at the rate specified in this Illinois Lease Agreement, or as allowed by law. All other terms and conditions as outlined in this Illinois Lease Agreement shall remain in full force and effect."

¶ 22　　Instead of filing a counteraffidavit, plaintiff merely argues that defendant must establish that she paid rent during her month-to-month tenancy so as to survive summary judgment. A nonmoving party, however, need not prove its case in order to withstand summary judgment; it must merely present some factual basis that would entitle it to judgment. See *Selvy v. Beigel*, 283 Ill. App. 3d 532, 538 (1996). In accordance with this proposition, if any facts upon which reasonable persons may disagree are identified (including any inferences that may be fairly drawn from those facts leading to different conclusions), the circuit court must deny the motion and direct the resolution of those facts and inferences to be made at trial. *Winnetka Bank v. Mandas*, 202 Ill. App. 3d 373, 387 (1990).

¶ 23　　Here, defendant presented some factual basis that would entitle her to judgment. In support of her claim, defendant attached to her response to the motion for summary judgment an affidavit in which she averred that she had resided in the property since January 6, 2012, pursuant to a rental agreement that required her to pay $950 each month to the property owner. Defendant further averred that she continued to reside in the property and attached a copy of the original lease. Viewing the pleadings, admissions, and affidavits on file in the light most favorable to defendant, as we must, these documents set forth a genuine issue of material fact as to whether defendant was a month-to-month tenant pursuant to the original lease at the time the order approving the judicial sale was entered in favor of plaintiff. See *Gizynski*, 2015 IL App (1st) 142871, ¶ 36. Thus, our *de novo* review of the record reveals that plaintiff's right to a judgment of possession is not clear and free from doubt as a question of material fact remains. See *Outboard Marine Corp.*, 154 Ill. 2d at 102. Accordingly, the summary judgment of the circuit court is reversed and the matter is remanded for further proceedings consistent with this opinion.

¶ 24　　　　　　　　　　　　　　　　　　CONCLUSION

¶ 25　　For the reasons stated above, the judgment of the circuit court is reversed, and we remand for further proceedings consistent with this opinion.

¶ 26　　Reversed; cause remanded.