**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 230430-U

Order filed January 29, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| LISA CASTILLO, | ) | Appeal from the Circuit Court |
| | ) | of the 21st Judicial Circuit, |
| Plaintiff-Appellant, | ) | Kankakee County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-23-0430 |
| | ) | Circuit No. 19-L-143 |
| | ) | |
| MONICAL'S PIZZA CORPORATION, | ) | Honorable |
| | ) | Lindsay Parkhurst, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE HOLIDRIGE delivered the judgment of the court.
Presiding Justice Brennan and Justice Davenport concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*: Summary judgment was appropriate where the plaintiff produced no evidence the defendant undertook any steps to remove snow or ice and produced no evidence of negligent construction or maintenance.

¶ 2     This appeal follows an order granting summary judgment in favor of the defendant, Monical's Pizza Corporation (Monical's Pizza), in an action for premises liability and negligence. The plaintiff, Lisa Castillo, was injured when she slipped and fell outside a branch of Monical's Pizza, and she brought suit, alleging that Monical's Pizza was negligent for failing to

create or follow safety procedures and for failing to maintain its entryway. The circuit court granted summary judgment in favor of Monical's Pizza.

¶ 3                                I. BACKGROUND

¶ 4        On January 7, 2018, Castillo and her husband met some friends for lunch at Monical's Pizza in Bourbonnais. When they arrived, the weather was dry and sunny. As they entered the restaurant, they walked up a slightly sloped pedestrian ramp, which was clear and dry. While they ate, the temperature fluctuated, sometimes dropping below freezing. As Castillo exited the restaurant, she took two to three steps, then fell forward onto her right shoulder, causing an injury. After falling, Castillo observed that the walkway was wet and covered with ice, which made it slick.

¶ 5        On December 5, 2019, Castillo brought suit against Monical's Pizza, alleging premises liability and negligence. Specifically, Castillo alleged Monical's Pizza was negligent for failing to (1) create a safe means of entering and leaving the restaurant, (2) implement safety procedures related to snow and ice removal, (3) follow any existing procedures for snow and ice removal, and (4) maintain the entryway in a reasonably safe condition.

¶ 6        During discovery, Monical's Pizza disclosed two corporate representatives, Jon Trezise and Ralph Rorem. Trezise testified that Monical's Pizza teaches its management teams to clear any sidewalks and pedestrian walkways of snow and ice, first in the morning, then again in the afternoon, and to be "proactive throughout the day during inclement weather to make sure that [pedestrian walkways] are treated with ice melt and *** cleared of snow and ice." However, there were no checklists or specific procedures for implementing that training, and Monical's Pizza had no information or documentation to suggest whether ice melt was applied on January 7, 2018, prior to Castillo's fall.

¶ 7    Rorem testified about the construction of the building and its subsequent maintenance. The restaurant's entrance was preceded by a large, slightly sloped section of concrete consisting of a concrete walkway and a concrete transition to the parking lot. Rorem oversaw the construction of the restaurant in 1998, and he testified that the building's interior and exterior were inspected approximately every five years, including the walkway. During construction, the concrete transition between the parking lot and the restaurant's entrance was treated by impressing it with diamond-shaped metal to create a diamond pattern in the concrete. Closer to the entrance, a "broom finish" was employed. A broom was swept along the wet concrete "perpendicular to the dominant direction of travel." The resulting textured surfaces created a form of slip resistance and signaled a change in the grade of the walkway. The slip-resistant surface was still present in 2018, when Castillo fell, though the impressions "weren't as sharp as they were in 1998" due to foot traffic.

¶ 8    The parties each retained controlled experts. Monical's Pizza's expert, Robert Plichta, conducted an on-site investigation, which revealed the roof of the building sloped away from the entryway and toward the back of the building. He further noted there were no exposed downspouts or gutters. The concrete walkway closest to the building sloped away from the building at an angle of 3 degrees, increasing to 5 degrees near the parking lot. The entryway had no lateral slope. Plichta observed the walkway to be in good condition and compliant with all relevant building codes.

¶ 9    Castillo retained Mark Briggs, a risk and safety expert. Briggs opined that Monical's Pizza should have been aware of the danger posed by accumulating snow or ice, which, he stated, was the cause of Castillo's fall. He suggested that Monical's Pizza should have adopted a more robust safety plan and trained its employees to prevent the accumulation of snow or ice by

3

applying ice melt. Briggs also testified that he believed the sidewalk was not properly constructed or maintained, although he did not specify how. He stated that a "5-degree slope with banked sides and a smooth surface located at a method of ingress or egress creates an environment for an unnatural accumulation of snow and/or ice." To determine the slope of the walkway, Briggs relied entirely on Plichta's measurements.

¶ 10　　　　On March 27, 2023, Monical's Pizza moved for summary judgment. In its motion, Monical's Pizza argued that Castillo had failed to establish that the accumulation of ice that caused her to fall was unnatural. Following a hearing, the court granted the motion for summary judgment and dismissed Castillo's complaint. Castillo appealed.

¶ 11　　　　　　　　　　　　　　II. ANALYSIS

¶ 12　　　　On appeal, Castillo contends that a genuine issue of material fact existed as to whether the accumulation of ice that caused Castillo to fall was unnatural, and the circuit court erred by failing to consider that Monical's Pizza voluntarily undertook a duty to maintain its walkway.

¶ 13　　　　We review the circuit court's grant of summary judgment *de novo*. *Allen v. Cam Girls, LLC*, 2017 IL App (1st) 163340 ¶ 28. Summary judgment is appropriate only when "there is no genuine issue as to any material fact *** and the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/1005(c) (West 2018). However, summary judgment is "a drastic measure and should be granted only if the movant's right to judgment is clear and free from doubt." *Blewit v. Urban*, 2020 IL App (3d) 180722, ¶ 37. To that end, when ruling on a motion for summary judgment the circuit court is required to construe the record strictly against the movant and liberally in favor of the nonmovant. *Id*. The court is entitled to draw reasonable inferences from undisputed facts, but where reasonable persons could draw divergent inferences

4

from the facts, the issue should be decided by a trier of fact and the motion denied. *Bellerive v. Hilton Hotels Corp.*, 245 Ill. App. 3d 933, 935-36 (1993).

¶ 14 In Illinois, accumulations of snow or ice are treated differently depending on whether they are deemed natural or unnatural. A natural accumulation is "an accumulation of snow or ice caused by the mere falling and settling of snow or precipitation." *Mickens v. CPS Chicago Parking, LLC*, 2019 IL App (1st) 180156, ¶ 26. An unnatural accumulation may occur when "snow or ice is produced or accumulated by artificial causes or in an unnatural way or by a defendant's own use of the area concerned and creation of the condition." *Fitz Simmons v. National Tea Co.*, 29 Ill. App. 306, 318 (1961). For example, mounds or piles of snow created by snow-removal efforts are generally considered to be an unnatural accumulation. See, *e.g.*, *Ziencina v. County of Cook*, 188 Ill. 2d 1, 13 (1999); *Russell v. Village of Lake Villa*, 335 Ill. App. 3d 990, 994 (2002).

¶ 15 At common law, a property owner has no general duty to remove natural accumulations of snow or ice. *Allen*, 2017 IL App (1st) 163340, ¶ 29. In contrast, property owners have a "duty of reasonable care to prevent unnatural accumulations of ice and snow *** where they have actual or constructive knowledge of the dangerous condition." *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 20. To defeat a motion for summary judgment in a slip-and-fall case alleging an unnatural accumulation, therefore, a plaintiff must present some evidence suggesting the accumulation of ice, snow, or water is unnatural and that the property owner had actual or constructive knowledge of the condition.

¶ 16 The voluntary undertaking doctrine creates an exception to the general rule that property owners owe no duty to protect tenants from natural accumulations. *Claimsone v. Professional Property Management, LLC*, 2011 IL (2d) 101115, ¶ 29. Under a voluntary undertaking theory,

5

if a property owner "voluntarily assumed a duty to remove a natural accumulation of snow, ice or water, he is held to a standard of ordinary care and will be liable if he performs the undertaken duty negligently." *Reed v. Galaxy Holdings, Inc.*, 394 Ill. App. 3d 39, 47 (2009). The duty of care to be imposed is limited to the extent of the property owner's undertaking. *Id*. The mere existence of a rainy- or snowy-day maintenance program is not enough to impose liability. *Id*. The critical inquiry is whether the property owner undertook actions to remove naturally occurring snow or ice, and whether the property owner acted negligently in doing so. See *Roberson v. J.C. Penney Co.*, 251 Ill. App. 3d 523, 526-27 (1993).

¶ 17    Voluntary undertaking theories apply to cases involving nonfeasance—the failure to perform some protective action—in addition to cases of misfeasance. However, in the case of nonfeasance, the defendant must have promised to perform some action to protect the plaintiff, and the plaintiff must have reasonably relied on the defendant's promise. *Claimsone*, 2011 IL App (2d) 101115, ¶ 22. The plaintiff's reliance on the defendant's promise is "an independent, essential element" of such a claim. *Bourgonje v. Machev*, 362 Ill. App. 3d 984, 997 (2005).

¶ 18    To avoid summary judgment on the issue of premises liability, therefore, Castillo was required to present sufficient evidence to suggest Monical's Pizza either (1) caused an unnatural accumulation of water, ice, or snow, which caused her injuries or (2) voluntarily undertook to remove water, ice, or snow, and performed the task negligently. *Tzakis v. Dominick's Finer Foods, Inc.*, 356 Ill. App. 3d 740, 746 (2005). Alternatively, Castillo could have presented some evidence that Monical's Pizza failed to take protective actions despite promising to do so. *Claimsone*, 2011 IL App (2d) 101115, ¶ 22.

¶ 19    The record contains no evidence to suggest snow or ice accumulated unnaturally on January 7, 2018. Castillo's expert, Briggs, testified the sidewalk itself was unnatural because it

6

was made of concrete. However, the relevant inquiry is not whether the structures coated with ice or snow are natural, but whether the ice or snow has been forced to accumulate in some unnatural way. *Fitz Simmons*, 29 Ill. App. at 318. "While the plaintiff need not prove her case at the summary judgment stage, she is required to come forward with some evidentiary facts or material to show that the water upon which she slipped was of unnatural origin." *Shoemaker v. Rush-Presbyterian-St. Luke's Medical Center*, 187 Ill. App. 3d 1040, 1043 (1989). The only evidence produced in this case suggested that water was exclusively channeled away from the entrance and toward the parking lot. The roof sloped away from the entrance, no downspouts drained toward the walkway, and the concrete walkway slope, though slight, also angled away from the building.

¶ 20     There is also no evidence to suggest Monical's Pizza took any actions to remove water, ice, or snow from the walkway prior to Castillo's fall. On appeal, Castillo asserts this lack of evidence demonstrates misfeasance. However, a plaintiff cannot establish liability merely by alleging that a landowner failed to adopt or implement a safety policy. *Reed*, 394 Ill. App. 3d at 47. Moreover, the failure to perform a protective action is more accurately described as nonfeasance. *Claimsone*, 2011 IL App (2d) 101115, ¶ 22. Claims of nonfeasance require the plaintiff to allege and prove that the defendant promised to perform some protective action and the plaintiff's reliance on that promise (*id.*), and there is no evidence that Monical's Pizza promised to perform any actions to protect Castillo or that she relied on such a promise. Absent such evidence, Castillo's voluntary undertaking theory necessarily fails and was properly dismissed on summary judgment. *Bourgonje*, 362 Ill. App. 3d at 997.

¶ 21     Nonetheless, Castillo's pleadings and expert testimony suggested an alternate theory: that Monical's Pizza negligently constructed and maintained the entryway. An exception to the

common law rule that landowners have no duty to remove natural accumulations of snow or ice exists when a landowner negligently constructs or maintains property, such that the accumulation becomes unnatural due to negligent construction or maintenance. *Muphy-Hylton v. Lieberman Management Service, Inc.*, 2015 IL App (1st) 14804, ¶ 28.

¶ 22    Here, ordinary principles of common law negligence apply. "To establish common law negligence, a plaintiff must establish a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Bailey v. Graham Enterprises, Inc.*, 2019 IL App (1st) 181316, ¶ 29. Landowners who control the means of ingress and egress have a duty to illuminate such areas properly and give adequate warnings of known, dangerous conditions. *Richter v. Burton Investment Properties, Inc.*, 240 Ill. App. 3d 998, 1002 (1993). This duty is "not abrogated by the presence of a natural accumulation of ice, snow, or water." *Branson v. R&L Investment, Inc.*, 196 Ill. App. 3d 1088, 1092 (1990).

¶ 23    However, Castillo provided no evidence that the walkway was negligently constructed or maintained. Although Briggs alleged the walkway's sides were banked, he provided no evidence supporting this assertion. He relied exclusively on the report generated by Monical's Pizza, which, contrary to Briggs' assertion, stated there was no lateral slope to the walkway. And although Briggs testified that Monical's Pizza failed to maintain the walkway, he provided no specific information as to what the defendant should or could have done differently to maintain the sidewalk apart from adopting and implementing a snow and ice removal policy. As noted above, a landowner is not required to adopt such a policy, nor does liability arise from the failure to execute such a policy unless it is done negligently. *Reed*, 394 Ill. App. 3d at 47. The only evidence adduced by the parties as to the condition of the walkway came from Plichta's report, which found the walkway to be in good condition. In the absence of any evidence supporting

8

Castillo's claim of negligent construction or maintenance, summary judgment was appropriate, and we affirm the circuit court's grant of summary judgment.

¶ 24                                    III. CONCLUSION

¶ 25         The judgment of the circuit court of Kankakee County is affirmed.

¶ 26         Affirmed.